Please be seated. Thank you. Before we begin this morning, for the record, you'll notice we're missing one of the judges. We are a five-judge court. Our judge from the Fifth District, due to prior judicial commitment, is unable to be here today. But all five judges will be fully participating in each and every one of your cases. The judge has, obviously, your briefs, has the complete record available, and importantly, today we'll have a recording of your oral argument. So everything necessary to participate in our panel is available to this judge, and he will be a fully participating member in each and every decision in your cases. Thank you. Will the clerk please call the first case of the morning? Yes, Heather. I'm turning it back to you. Okay. We'll talk about that. Let's pass on that to the side. Case 217-0117, Bill of the Lake Zurich v. Kenneth and Margaret. Right where you are. Are you the athlete? Oh. There we go. That's all right. Counsel, you may proceed. Thank you, Your Honor. May it please the court, counsels, my name is Jacqueline Genachowski, and I represent the appellant, the Village of Lake Zurich, in this matter. I'm here today to ask you to reverse the decision of the commission as it is against the manifest way of the evidence. As you are aware from our briefs, Mr. Puckhamer was a firefighter employed with the Village of Lake Zurich. He sustained a compensable accepted accident to the right knee in June of 2011. He underwent accepted treatment and ultimately presented for a functional capacity evaluation in June of 2012. And was he injured during the FCE? Your Honor, it is our position he was not injured in the FCE. Based upon the FCE report, the lack of documentation on the pain diagrams completed by Mr. Puckhamer himself, as well as the testimony of the FCE therapist. All right. Let me ask you this to cut to the chase. The claimant, of course, testified that he did fall and injure his knee during the FCE. You say there's no documentation. Doesn't the report mention an incident during repetitive kneeling? Is that not consistent with the testimony of the claimant? The testimony of the claimant is that he sustained an injury to both knees, Your Honor. And the documentation that you're referring to discusses an incident where the right knee gave way during the repetitive kneeling. There was no injury to the left knee. The reason that that fact is important in this case is ultimately Mr. Puckhamer claims that he sustained a subsequent injury to the right knee due to overcompensating for the alleged injury to the left knee in the FCE. Generally, an injury occurring to an FCE is considered to be a work-related injury. Is it not causally related to the original injury? You are correct, Your Honor. But it didn't happen? It's our position there was no injury to the left knee. It's not documented in the records that were admitted as a part. But he said it happened. Didn't he? He testified that he had immediate pain at the time of the trial. However, he did not document that in the pain diagrams, nor was there a phone call to his treating physician until approximately 5 o'clock. Isn't his credibility a matter for the commission to decide whether he was telling the truth or he wasn't telling the truth? It is. There are inconsistencies in his testimony as well as the records. Specifically, he was unable to explain at the time of trial why he didn't document the pain he alleged to the left knee. And the commission knew that? Based on the decision we received from the commission, we would respectfully disagree with you, Your Honor, as they don't reference those records or that documentation in their written decision. Well, if that argument were correct, then the commission would have to attach to its decision the entire transcript of what goes on at the arbitration. They don't mention everything that happens there. They come to conclusions, and they either find somebody credible or they find them incredible. But I don't know how exactly, if he says it happened and no one says it didn't happen, and the woman at the F.C.E., I guess, says she doesn't remember anything, or the person, whoever it was, how do we overrule the credibility finding of the commission? I don't know how we do that. In this instance, Your Honor, the F.C.E. therapist did testify that she was not aware of any incident to the left knee at the time of the F.C.E. So her testimony is in direct contrast to that of the claimant's. Again, I understand that it is a credibility issue, but that was the report that was admitted at the time of trial. Are you talking about Ms. Smith? Yes. I thought she said she had no independent recollection of the F.C.E. No. She testified she had no independent recollection of the F.C.E. Correct. However, we did admit a report at the time of trial, which was completed one month after the F.C.E., which indicated there was no injury to the left knee during the evaluation. Okay. I see your point. I understand it. Who's Dr. Anderson? Dr. Anderson is Petitioner's training physician. Did he opine on the causal connection? He did, Your Honor. And what did he say? Based upon the Petitioner's self-reports, it was his opinion that he did sustain some sort of injury to the left knee. Can't the commission seize on that as additional support for their decision? In this case, it appears that they did. However, as you are aware, it's our position that the remaining evidence is contrary and is supporting a finding against the man who testified at the F.C.E. Tell me out here, Dr. Anderson was his treating physician. Yes. And he rendered an opinion that there was a causal link between that condition and the F.C.E. Yes. Alleged injury. Yes. And he based that on what? It was the Petitioner's self-report of the injury. It was documented in a phone note, which occurred five days after the accident, alleged accident. So there's also a lapse in time in terms of documentation regarding this alleged left knee condition. So we basically have the claimant saying this happened during this activity. Yes. And then five days later, the physician saying the claimant told him it happened. In a phone record, and I believe the actual visit note was a few days later, Your Honor. Well, yeah, you say it's five days, a few days. Well, the phone note that we are referencing, the five-day gap, was when Mr. Potcaper contacted his physician over the telephone to report this incident, but the actual medical visit note occurred after those five days. Okay, the phone note and the medical visit, are they consistent? They are. Okay, so we really have two alleged documentations of self-reporting statement that's also testified to at trial by the claimant, am I correct? Yes. That the incident occurred and that it resulted in this self-reporting injury. Yes or no? Yes, Your Honor. Okay, in the medical visit, okay, after the phone contact, did the medical visit have any medical opinion or medical diagnosis of the nature of the injury? Yes. And what was that? Dr. Anderson did document an injury that occurred during the functional capacity evaluation based upon the petitioner's report. Okay, yeah, I mean he just documented the self-report, but do we have any medical examination and medical findings? That's the difference between documenting a self-report. Was there an increased signal in the MRI? With respect to the left knee, Your Honor, there was evidence that the claimant had pre-existing degenerative conditions in the left knee, which I can, if there was an increased finding in the subsequent MRI, I'm not sure. The August MRI? Correct. You've got some evidence on your side. Is it Dr. Baird? Dr. Baird, yes, Your Honor. He gave a contrary opinion, right? He did give a contrary opinion, and that was based upon the review of the pre-existing treatment records documenting the degenerative condition of the claimant's left knee. Additional evidence that was admitted at the time of trial is Mr. Puckhaber did testify he may or may not have been on a trip to Florida during that period between the alleged incident of the FCE and reporting it to his physician. So as we stand here before you today, no one can definitively state whether this condition occurred during that Florida trip. And without the proper documentation and the functional capacity evaluation, as well as the delay in reporting it to his treating physician, we believe there is evidence to support a reversal of the commission's decision. And to a position that all that evidence is against the commission's decision, therefore, was against the manifest way of the evidence, correct? Yes, Your Honor. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors. May it please the Court, I'm Leslie Rosen on behalf of Mr. Marte, and Mr. Michael Meyer, the trial lawyer, and Kevin Puckhaber. As you just heard Counsel concede, there was a credibility case, and there was testimony that the arbitrator could rely on. Manifest way means that it's got to be clearly evidence, plain and indisputable. I think the opposite conclusion is clearly apparent. Yes. That's a higher standard. Yes. You don't want to work against yourself. No, it's a hard case for them to prevail on. Thank you. In this case, the arbitrator said he had to decide between two credible witnesses, and one was Mr. Puckhaber, and I don't know who the other was, actually. Oh, Dr. Beer. Dr. Beer saw Mr. Puckhaber for 20 minutes, and he did that to read Dr. Anderson's evidence deposition. He didn't know that Mr. Puckhaber had called Dr. Anderson shortly after the FCE, and he didn't even ask Mr. Puckhaber how the left knee injury occurred during the FCE. So what did he testify to? He testified based on the records, as Counsel just told you, that he had a preexisting condition. Then the other side made up that he went on a fishing trip, so it could have happened then. So there's credibility questions, and they were resolved in favor of Mr. Puckhaber, whose story was not 100% the same every time. That just indicates that he was telling the basic story, that he hadn't rehearsed it, but he was consistent throughout that he was kneeling, and his knee was always buckling, his right knee. There's no question about that. By the time he got to the FCE, his right knee was buckling. He lost his balance. He went down on both knees, primarily the right, but some on the left, and he had some injury. It's true, Christine Smith had no independent recollection, but she did not note this in the record. According to Mr. Puckhaber, she brought it up, and she admitted that this kind of incident might not make it into the records. It might make it into the records. It might not. She had no recollection. So there was evidence. There was evidence. There was significant evidence, and the arbitrator waited. He filed in favor of Mr. Puckhaber. The commissioners reviewed it. They filed in favor of Mr. Puckhaber, although you're only reviewing them. The circuit court also reviewed it and went in favor of Mr. Puckhaber, and that's the end of it. That's all there is. Mr. Puckhaber's no question that his knee was still buckling by the time he went to the FCD. It was buckling after the work hardening. It was still buckling all the time, and then this happened. You know, I have nothing else. Do you have any questions? I don't believe there are. Okay, thank you. Thank you, counsel. Counsel may reply. The appellate rests on our briefs and the arguments previously presented. Again, we would just ask that you review the evidence and reverse the commission's decision or at a minimum remand it for further consideration. Thank you, counsel. This matter will be taken under advisement and a written disposition will issue.